Good morning. We have three appeals to hear this morning. We're familiar with your case as counsel. We've read the briefs, authorities cited in the briefs, at least portions of the record. So in the limited time that you have this morning, feel free to get to the points that you want to make sure are the highlights this morning. You don't waive anything by not addressing something that's addressed in your brief. Please pay attention to the traffic lights. When the red light shines, it's time to stop. As Chief Judge Edmondson, my chief, I always refer to him as my chief, would say, please don't treat the red light as aspirational. If you're answering a question from the court, of course, you can finish your answer without losing any rebuttal time if that's something you have. Our first appeal this morning is Amber Jackson v. City of Atlanta, Georgia. Mr. Mitchell, will you come and speak with us, please? Mr. Mitchell, could you pull that mic up a little bit so it's closer to you? Is that better, Your Honor? A lot better, thank you. And I have the pleasure of representing Officers Brandt and Swanger in this matter. I'm going to spend a few minutes talking about the facts. I'm going to spend a little bit of time talking about the jurisdictional question. I will spend most of my time talking about the video issue. We know, I think, the facts. We've looked at that. So, you know, take your time. Do it the way you want to do it. But, you know, be mindful that we know what the case is generally about. Understood. I do want to highlight a couple of things with regard to the facts, specifically the things that are obvious, I believe, from Swanger's body-worn camera. And there are timestamps in the brief that I hope the Court focused on that I believe outline what the totality of the circumstances were that the officers were facing that night. The officers were aware that there were significant looting both in Atlanta and in the mall area. Lenox Mall was closed. It was after midnight. And all these facts, as the Court is aware, are important because those are facts that in other cases previously decided are things that give reasonable suspicion to stop a car. I'm sorry, Counselor. You're saying that the context of what was happening that day with other people are relevant for purposes of the traffic stop of Ms. Jackson and her fiancé? I believe so. What was in the mind of the officers that night was that there had been significant looting. And, in fact, that specific fact is tied to the reason that they stopped this particular car. It was leaving Lenox Mall, which was closed. It went up the wrong side of the particular exit that it was supposed to go up. I looked at the video. It's not apparent to me from the video that they're driving on the wrong side. If you look at Swanger's body-worn car. And she's not the driver in any event. I mean, the plaintiff here is just a passenger, right? And I have a little hard time understanding why the officer just comes and pulls her out of the car. Again, the vehicle in Swanger's body-worn camera at 38.50 seconds to 39.10 seconds, you can see both sides of that exit of Lenox Mall. And it is clear that this car is on the wrong side. Also, at 40.49 to 40.57, you can see behind the car and you can see the directional arrows proving that the car is in the wrong lane of travel. How does that speak to the issue of looting? Because there was a traffic violation, they had reasonable suspicion to stop that vehicle. Because of what the officers knew were going on in the area, they had the right to investigate whether this vehicle that was attempting to leave, the passenger had moved the barricades, whether or not they were actually engaged. But you also, Counselor, have an officer who is cursing at Ms. Jackson, cursing at her fiancé, starting the conversation saying that he is pretty much agitated because of everything else that everybody else was doing. And so how does that justify or explain the stopping and the conclusion that these individuals were looting? Those particular facts are not material to the Fourth Amendment analysis. It is an objective analysis. It is a reasonable analysis. And based on what the reasonable officer seeing what they would see, a traffic violation, looting in the area, a vehicle attempting to leave the premises at some speed in the wrong direction, the officers had suspicion to stop that vehicle and investigate whether or not they were engaged in looting. All right. So the vehicle is being driven by someone who is not a plaintiff, right? And perhaps, I think we could set aside for a moment, whether the officer had a basis for stopping the car because of whatever the driver had done or not done. What in the world though is the basis for pulling this woman out of the car? Well, given the type of investigation that is going on and what they are trying to determine, the officers are entitled to remove the passengers from the vehicle in order to complete their investigation. That is Maryland v. Wilson by the United States Supreme Court, this court in Hudson v. Hall, and a number of other cases have held that if you have reasonable suspicion to stop the vehicle, then you also have the right, the officers have the right to investigate whether or not the passengers are involved. And to do that, they have to remove them. Involved in what? I mean, she wasn't driving the vehicle. What is the reasonable suspicion for removing her from the car? Because the driver might or might not have been driving on the wrong side of a traffic lane. Well, first of all, she is the one who moved the barricade. But most importantly... And what offense is that? It's interfering with public property and it's interfering with what it was claimed to be. Your brief does not identify a provision of the Georgia Code that would be a criminal offense in removing the barricade, which is, from my interpretation of the video, all she is trying to do is help the driver get out of a parking lot that has been barricaded, not come into a parking lot that has been barricaded. But what would be the criminal offense? There is no statute I gave the court. None from this court that indicate that interfering with those types of, and I guess the ultimate point would be the law wasn't clearly established that that wasn't a crime and he didn't have the right to... What would be... So you'd have qualified immunity because of the absence of a crime? You'd have qualified immunity because it wasn't clearly established that he didn't have the right to investigate why she was moving the barricade. Because there's no offense? I mean, you just said there's no statute. There was a barricade in place and she interfered with that barricade. And you said that there's no provision of the Georgia code that would prohibit that. There's not. There's not. So how could he have qualified immunity for seizing her for that? Because it wasn't clearly established that investigating why someone would interfere with an official barricade that had been placed was inappropriate. But more importantly, when the officers have reasonable suspicion to stop a vehicle with multiple occupants, they have the right under the Fourth Amendment to remove those passengers to complete their investigation. Counselor, these officers were disciplined, correct, for their behavior that evening. Is that right? They were found to have violated two provisions of the Atlanta policies and practices. And I believe your brief states that the existence or the violation of a policy doesn't necessarily mean the violation of a clearly established law. And you cite to Thompson, but Thompson only speaks to the existence of a policy. It doesn't speak to the impact of violating a policy. And Wren v. United States, the United States Supreme Court case is really a better case on that issue. They say that the various policies and practices, because they vary so much from department to department, are not the touchstone for determining what is clearly established law. And I see you're also running out of time. I really am interested in the video and the basis that you're offering for why it was authenticated and therefore something that the district court should have considered. Well, there's a number of arguments there. First of all, the plaintiff never challenged the authenticity. Let me ask you this. Do we have jurisdiction over that? Because it seems to me that on an interlocutory appeal from a denial of qualified immunity, we're not here to review everything that happens in a district court. And an authentication issue, it seems to me, it's not apparent to me that we have jurisdiction to address that. Well, there are two cases that this court has decided. One that's reported this summer, Baker versus the city of Madison, where, and then in the case that's not reported from a couple years ago, Robinson, this court said that undisputed for purposes of this type of issue is whether or not there's any serious dispute about whether the video shows what the video shows. And there is no dispute about that. To the court's question about jurisdiction, yes, because it is inextricably interwoven. It is at the heart of what this court has to determine. It might well be that you could get it authenticated and the groundwork laid for it being admissible, right? Sure. So I'm not sure why that's inextricably intertwined. It might well be that you can do that. Campbell, McDowell, a number of cases have addressed the issue of using video on a motion to dismiss before there has been any discovery at all. And when the Scott versus Harris by the United States Supreme Court stands— In Scott versus Harris, there's no question about the admissibility of the video. The video was admitted. Well, in this case, there's no question about whether or not the video shows what it shows. And the legal issue for this court is whether or not that type of video ought to be considered by the court in deciding a motion to dismiss when it clearly shows the event. And not only that, it's referenced in the complaint. Judge Carnes, do you have any questions? I do. First of all, in the inextricably intertwined, you're talking intended appellate jurisdiction, are you not? Yes, Your Honor. And that's totally discretionary with the court, right? I believe that's true, Your Honor. Okay, so we can say we've got enough on our plate, leave that for development in the district court, the case goes back, so forth and so on, right? Well, you could, but given the issue— And whatever you would think, we can do that. Can we not? I mean, I've done it in a number of cases. After the Supreme Court taught me my lesson on intended jurisdiction, in the Sweatt case, so we have discretion on that. And let me ask you this, isn't there a local rule that prohibits the attachment or consideration of videos or anything else by hyperlink in a plea? Well, that issue wasn't raised, even the district court waived any consideration or reliance upon that local rule. I'm not talking about the district court. I'm talking about me. Isn't there a rule in the district court? There is a local rule in the northern district that says that you ought to provide hard copies. Which makes perfect sense, because if all you've got is a hyperlink, here today, gone tomorrow. And also, the content of the hyperlink can be replaced and substituted. Well, and again, Your Honor, there's no allegation of that here, and it's not the case. There's still live links. Let me ask you something else. This puzzled me since the get-go in this case. Claim one was a violation of Fourth Amendment. Basically, no probable cause for reasonable suspicion for the stop and the arrest. Right? Against both individual defendants, right? Correct. All right. And that claim was left in the case. The district court did not grant you summary judgment on that, correct? That's correct, Your Honor. All right. Then we go to the excessive force claim against Swain. The district court dismissed that claim, did it not? It did. All right. But the district court, and this is what I don't understand. The district court left in the claim against Brandt for not intervening to stop the excessive force, which is no longer in the case. How can the man who body-slammed the plaintiff against the pavement is out on the excessive force claim? But the man who allegedly didn't stop him from doing that is still in the case. Now, what sort of sense does that make? I'm not sure that that makes sense, but that wasn't my appeal. I guess the way that I interpreted that is because the issue of force would still be an issue on damages. Given that it was a motion to dismiss rather than summary judgment, the court believed that there was still some issue on interventions, which of course, as I agreed, we don't have. The problem is the district court's reasoning in dismissing count two was that the amount of force would still be part of the unreasonable seizure claim in count one and that would go to damages. The problem is that somehow those are not separate claims. I think that's questionable. But that count, count one, is against both officers. So it makes no sense to have a failure to intervene claim that earlier was understood to relate only to count two as to the other officer, but now is somehow related to count one, which is against both officers. So the officer who's failing to intervene is failing to intervene to stop his own seizure. Well, the failure to intervene claim is only against Brandt, not against Swain. I know, but Brandt is a defendant on count one, right? He is. I believe what the plaintiffs argued is it had something to do with the report writing, which is not, that doesn't give rise to a constitutional claim. Do you have any other questions, Judge Carnes? I don't understand that answer. Brandt is charged with failing to intervene to stop the excessive force. Five of the first six allegations in the complaint involving his failure to intervene say excessive force. So he's still charged with failing to intervene to stop that, even though the person who is charged with having employed excessive force is not. And everything that was said about why Swinger is left in the claim, is left, I'm sorry, is not left in the excessive force claim applies to Brandt as well. If there are damages for the stop, which is a claim against both of them, then they ought to be treated equally as to the excessive force damages. If not, I'm... I don't dispute that, Your Honor. I don't dispute that. I was making a separate argument on the motion to dismiss, but I don't dispute what the court's saying. And if that's an independent reason to reverse on Brandt, I mean, I'm fine with that, if that's what you're asking. You're fine with us reversing the dismissal of one of the claims against your client? I'm fine with the court reversing the failure to dismiss the claim against Brandt. That's what I'm interested in. Okay. I'm glad we straightened that out. How much rebuttal time will I have? You have your full five minutes because you've been answering questions from the court. Thank you. You're welcome. Mr. Moore. Thank you, Your Honor. May it please the court. I'd like to begin with the last issue that was raised, if I could. It's an interesting issue, and it's one that wasn't really fully vetted in the district court, which I think is why we have the situation we have. Nor did you raise it on appeal. You don't have a cross appeal. The problem is that the grant of qualified immunity, effectively, on count two, is not before us. I think a grant of qualified immunity is immediately appealable. You just didn't appeal it. In a cross appeal, I believe we could have. Yeah, you could have. Yes, that's right. Count two. You didn't do that. That remains as an interlocutory. I mean, I tell you, I don't think the district court was right about it, but I don't think we have jurisdiction to do anything about it because you didn't appeal that. I think it remains as an interlocutory ruling in the district court, and we can attempt to revisit it. You can do it later. Yeah, you could. I think our position would be that we can plead alternative theories and that it was incorrect. And it makes no sense, does it, to dismiss count two and then have count three, which is a failure to intervene, has to count two. No, I would agree with that, Your Honor, but I think the remedy would be to reinstate count two because Officer Swingler . . . We can't do that because you didn't appeal it. You can't do that, Your Honor, but the district court could because it was an interlocutory ruling. I think the problem Judge Carnes is having is what do we do to make sense of what we do have, which is an appeal of the denial of qualified immunity as to count three that's predicated on a failure to intervene to stop excessive force on count two, but count two no longer exists because the district court dismissed it. Are we obliged to reverse the district court on its decision about count three? Well, the court hasn't made that argument or asked the court to reverse on that ground, so we would argue that the issue is waived. Now, the other alternative answer to Your Honor's question is that you can dismiss the appeal for lack of jurisdiction, and we've urged the court to do that in our motion to dismiss the appeal. And if that were done, then all hope would be as a nullity, and we would . . . Do you agree with me that the issue about the admissibility or reliance upon the hyperlink is not properly before us? I understand, Your Honor. I mean, that clearly is not the type of legal issue that the Supreme Court was concerned with in Mitchell v. Forsyth or in Johnson v. Jones. That's an issue concerning the scope of the record in the district court. It's even preliminary to an issue of fact. And it's the type of decision regarding issues of authenticity and admissibility and, as the district court stated, credibility, the reliability of evidence that are classic district court questions. And those issues, as the court has stated on other occasions, are reviewed for an abuse of discretion. That's a matter for the district court's discretion as to whether to incorporate and exhibit into the pleadings for purposes of a motion to dismiss, whether to use that occasion to convert the motion into a motion for summary judgment. What's the seizure claim as it relates to your client? Are you objecting to the stopping of the vehicle where she wasn't even the driver? Or are you objecting to, or is your complaint directed toward the officer who approaches the vehicle and immediately opens the door and pulls her out? Well, I think it's the seizure of Ms. Jackson, Your Honor, which is, as it were, a combination of the two. If the vehicle's not stopped, Officer Swanger can't grab the door, pull it open, point the gun at her, scream obscenities, drag her out of the car, and burn her on the pavement. But are you contending that the officer lacked a basis for stopping the driver and the vehicle at all? Yes, absolutely. There was no reasonable suspicion to stop the vehicle at all. And certainly that doesn't translate into reasonable suspicion to believe that Ms. Jackson had committed any crime. As Your Honor pointed out, she's a passenger. And this is very different from Bradley v. Benton, which was actually our case, where the officer stopped a car and the passenger, when asked for his ID, leapt out of the car and took off running. This is not that situation. Ms. Jackson was dragged out of the car by Officer Swanger, as alleged in the complaint. And in fact, although we have some dispute with the consideration of his body cam video, Officer Swanger's body cam video does show that part of the incident pretty well, because he's wearing it. And so it shows him reaching for the door. You can hear the obscenities he's screaming. You can see that he's got his pistol in his hand. And so this is distinguished from the Bradley case for that reason. This is not a case where Ms. Jackson gave him reason to suspect that she might be engaged in some kind of criminal activity. I've watched this video a couple of times. It was not apparent to me whether the driver was driving on the wrong side of any traffic lane. But if I go back and look at this, and particularly the moments that opposing counsel has identified, let's say I conclude that the officer did have a reasonable basis for stopping the vehicle because it was on the wrong side. Now, I haven't seen that yet. But if looking back at it, I do see that. Then that aspect of the case is out. He would have reason. If the video shows that the vehicle was on the wrong side, there would be reasonable suspicion for at least stopping the vehicle. If it were clearly shown and the issue of incorporation of that video into the complaint were also upheld and the court got past that. I didn't think there was any issue about the district court relying upon the officer's body cam. Well, we did argue. Although, yeah, I didn't think there was any issue about that. There is no cross appeal of that decision, Your Honor. That's correct. Well, it was Ms. Jackson, though, who removed the barricade, correct? Or who attempted to do that? Ms. Jackson did move the barricade. You can't see that in the video. But Ms. Jackson did move the barricade because they were trying to leave. And just to be clear, is the removal or tampering with the barricade that's clearly placed in a way to block traffic, is that not itself some kind of violation? Well, the appellant has admitted that there's no Georgia statute that forbade that conduct. So no, Your Honor, it's not. So even if the police officer only saw her doing that, that still would not have been a sufficient basis to stop her and then everything to escalate to her being body slammed on the ground? That's been admitted not to be a crime. The barricade also, it's alleged in the First Amendment complaint that the barricade was unattended. So there's no one there to tell her not to do that. There's no one there for her to ask if she's allowed to do that. All she can do in order to leave is move the barrier. Usually you put a barricade to keep people from coming in. And you wouldn't be nearly as concerned, a property owner wouldn't be concerned by somebody who wants to remove it just to leave. The purpose is to keep people out. Presumably it wouldn't be to keep someone in the parking lot. Well, no, Your Honor. I believe the intent was to keep people out. And they're trying to get out. And they're trying to get out. And I'm not positive if this is alleged in the First Amendment complaint, but my understanding is that there was no barricade when they came in. They came in through a different entrance. I understand that. This was something they were surprised to see. There was no one there to talk to about it. So they just moved it so they could leave. And that's not alleged to be a crime. So that can't create reasonable suspicion of engagement in criminal activity. Counsel, let me ask you something. How long do you contend elapsed, perhaps a few seconds elapsed, from the time the car was stopped and the two officers got out until the body slamming took place? That probably would be shown in the timestamp of the body-worn camera, Your Honor. There's a mention in the briefs, 14 seconds. Is that about right? That is roughly correct, Your Honor. And in that time, Officer Brandt got out and, as instructed by Swanger, went to the driver's side to make sure the driver wasn't armed, find out what he was doing there, and make sure he didn't improperly exit the vehicle, right? You don't dispute he was engaged with the driver during that time, do you? None of that is alleged. I mean, doesn't the body cam show that? No, Your Honor, the body cam doesn't clearly show what Officer Brandt is doing. That's right, because Brandt had his turned off. Brandt had his turned off and was disciplined for that. But Officer Swanger's body cam is being worn on his chest. So in the beginning, it just shows his steering wheel. And then once he gets out of the vehicle... I got it with Swanger. I've seen that two or three times. But your position is that you don't dispute that Brandt went around to engage with the driver. What's alleged in the First Amendment complaint is that Brandt went to talk to the driver, but it is specifically alleged, Your Honor, if I may, that Brandt had an opportunity to intervene with Swanger and that he did not do so. And that, according to your position now, what you're telling us is, 14 seconds or so, whatever it was, minus the time Brandt engaged with the driver, Brandt should have followed or run over to where Swanger was and said, don't use excessive force against that woman. That's your position. Well, Your Honor, I'm not taking a position on a fact issue at the level of the appellant's motion to dispute. I'm talking about your pleading, counsel. That's what you've pled. You've pled in the essence that after he engaged with the driver, whatever amount of time that took, he should have run over and stopped his partner there from using excessive force against Ms. Jackson. However few seconds that was. Your Honor, Officer Swanger had his gun drawn from the moment he approached the car. So from the very beginning of that interval of time, and there's no allegation in the First Amendment. Counsel, you're firing my question. The body slam, which looked so bad on the video and was bad. The body slam. You're charging Officer Brandt with not going over and stopping that with whatever few seconds he had between his interaction with the driver and the body slam taking place, correct? That's what the pleading says, in effect. Well, Your Honor, we believe that Officer Brandt should have intervened to stop Officer Swanger's illegal seizure of Ms. Jackson by dragging her from the car while screaming obscenities. So you're saying that the failure to intervene is immediate? From the moment that the officer removed her from the vehicle, notwithstanding that Brandt's dealing with the driver at that time? Well, it's not alleged that Brandt's dealing with the driver. It's alleged that Brandt approached the driver's side of the car to engage with the driver. It's not alleged how he spent his time during that interval that Judge Carnes is talking about. What's alleged is that he had an opportunity... And your allegation then is that the failure to intervene is the entire seizure of the passenger from the car, from the moment that she's removed and including the body slamming, but it doesn't just start at the body slamming? Is that your position? That's right, Your Honor. It's unreasonable from the moment he holds a pistol on her and starts to drag her out of the car. So that's when Brandt should have... My challenge is, when did he have the opportunity? How much time did he have? Because everything, according to the video, happens very quickly. So at what point did he really have an opportunity to physically move to the other side of the car to stop what, even moving to that direction, has probably already happened? Well, Your Honor, it's not clear that he would have had to move physically to the other side of the car. He could have yelled, hey, Swanger, cut that out. Hold on, hold on. And Swanger would have said, gosh, you're right. I shouldn't be doing this. All that happens in 12, 14 seconds. Maybe not, Your Honor. Maybe he wouldn't have said that. But A, that's a jury issue, and B, Brandt didn't even try. Your point is, if Brandt had done that, you wouldn't have a claim against him? Well, if Brandt had at least tried, he wouldn't be named in that count. Yes, Your Honor. Counselor, this is not for the question. I just want to sort of speak in a separate opinion. You didn't cross-appeal the grant of qualified immunity. You can't cross-appeal the grant of qualified immunity. Because the whole purpose of qualified immunity is to relieve officers and officials from the burden of trial. It's not to subject them to rightful burdens of trial by giving you an appeal on claims that were wrongfully dismissed. Your appeal would have come at the end of the case on that. Now, arguably, you could ask the court, while the case was before that, please consider this and do something about it. Say something about it, because it's interwoven. You can, court, in the course of discussing the qualified immunity denials, say something about this, as we have today. And as a practical matter, you and me talking, I'd be surprised if the district court wasn't listening to this oral argument. I would be if I were a district court judge whose decision was before us. And we'll also have an opportunity in writing the opinion, whichever way it goes, to say something about that if we choose to. That's just my view on the jurisdiction on a cross-appeal. Thank you, your honor. If there are no further questions. Okay. Mr. Mitchell. Thank you. I want to use this time to address the issue that I was talking with Judge Carnes about towards the end of the last argument about pendant appellate jurisdiction and the discretionary issue. These police cases are becoming more and more common, and because of everybody having a telephone, that it's not only body-worn camera that's going to be at issue in these cases. In this case, I think, presents an opportunity for this court to address the issue of when, what are the principles for authentication or authenticity. That's not, I mean, these appeals, though, our jurisdiction over these appeals, because they're interlocutory, is circumscribed, it's limited. And we're not here to micromanage every aspect of the case, particularly questions of admissibility. I mean, look, you want to get this evidence in? You can get this evidence in. You just didn't do your work. For qualified immunity, it's not an issue of admissibility. What the Baker case says and what the Robinson case says is whether or not it's authentic. What this court has said is that authentic in these contexts, on a motion to dismiss before there's been any discovery at all done, I don't know who took this video. We don't know anything about it, other than that there was some hyperlink that you cite in, like, a reply, right? No, it's attached, the link is in the motion to dismiss. It's in the original motion. And it's, no one challenged, the plaintiff did not challenge the authenticity. And this is an important fact, is that she relied on, she references it in her complaint. In fact, there's a still image, it's page 16 of 53, the heading, the slip sheet for those still images says screenshots or images from witnesses' video. And the one from this particular video is if you look at the video at 33 seconds to 34 seconds, that's the image that the plaintiff attached to her complaint. And so, there's no question about the authenticity. And that's what this court, in Baker, on a motion to dismiss, said is the issue. Is there any serious challenge to does the video show what the video purports to show? And that's what the Supreme Court in Scott v. Harris said was important. Does the video show what it purports to show? And this one does, and that's why the court should have considered it, and this court ought to reverse on that particular issue. Backing up to the issue of jurisdiction, it is what the court ought to, in Ashcroft, what the Supreme Court said was that whether or not the pleadings make out a case is interwoven with the qualified immunity issue. Other cases have said that in deciding motions to dismiss, the court can consider video. Therefore, whether or not a court properly considered video or not, in a qualified immunity case, is critical to the court's consideration of the qualified immunity. Yeah, the problem is, I mean, our jurisdiction is to address the pure legal question of whether the officers violated a clearly established constitutional right. And you want us to expand that narrow review to include whether the district court should be considering hyperlinked videos or not. I think it's a narrow legal issue of what the district court ought to consider. If we're going to Scott v. Harris, understand that was a summary judgment case. If this court in numerous cases... There was no question in Scott v. Harris, too, about that being admissible evidence. And I think also in Scott, there was also no debate about what the video showed in the conclusion. And I think there is a question as to whether or not the court, the district court, if it had considered that video, whether it would view the video the same way you do. Well, that's a separate question. The question I'm asking this court to address is whether the court should have considered it at all. And because there were no issues raised, neither argued nor any specifics as to why it doesn't show what it purports to show, which seems to be this court's standard articulated most recently in Baker, it ought to have been considered in the trial court... But, counsel, the district court said there were issues of authenticity. It hadn't been authenticated. What the court actually said, what the court actually said was that it is not authenticated. Baker doesn't seem to require formal authentication. It seems to require that it be authentic. Well, informal, informal, counsel, formal, informal or whatnot, I can't imagine us holding a district court is required to admit and exhibit that it has doubts about the authenticity or at least says you haven't authenticated. And what I read that as saying is district court didn't say you can't authenticate it. It just says you haven't done it. And it's not as authentic as the body count videos, and therefore we know where they came from. And that's subject to both parties exploring. But this I don't know, and this is my bracket for the time being, closed bracket, I'm not going to consider it. I understand the court's concern. I just think that consistent with Robinson and Baker, the court should have considered it, and it's well within your jurisdiction. Of course, you could have gone back and done work to authenticate it and to lay the groundwork and ask the district court to reconsider in the light of that evidence, but you didn't do that. It was just a hyperlink. Right. Okay. We have your case. We're going to move to the second one today.